Emerson P. Jennings, Respondent, *v.* President and Directors of the Manhattan Company, Appellant.

Second Department, December 15, 1922.

**Principal and agent — action against bank to recover amount of check — plaintiff gave third person special power of attorney to collect drafts — drawee of draft gave third person check in payment — special power of attorney did not authorize third person to indorse payee's name on check and collect it — bank paying check liable to payee.**

A special power of attorney in which the power granted is defined to be, " to ask, demand; sue for, recover and receive certain two drafts," and " to ask, demand, sue for, recover and receive all such sum and sums of money which is or shall be due " on account of said drafts, does not authorize the attorney to indorse the name of his principal on a check which was given to the attorney by the drawee of the draft and made payable to the principal, and to collect the same.

Accordingly, where the attorney deposits the check for the account of his wife, the bank in which the check is deposited and by which it is collected from the maker is liable to the payee for the amount thereof.

Appeal by the defendant, President and Directors of the Manhattan Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Queens on the 20th day of June, 1922, upon the decision of the court rendered after a trial before the court without a jury, and also from an order of said court, made at the Queens Special Term and entered in said clerk's office on the 30th day of June, 1922, denying defendant's motion for a new trial.

*Frederick C. Tanner* [*Frederick C. Hanford* with him on the brief], for the appellant.

*George E. Polhemus* [*Charles Pope Caldwell* with him on the brief], for the respondent.

Young, J.:

This action was brought to recover the sum of $5,000 on the check set out in the complaint herein, drawn by Brown Brothers & Company on the National Bank of Commerce in New York in favor of the plaintiff, Emerson P. Jennings, the proceeds of which defendant collected and has failed and refused to pay to the plaintiff, the payee thereof.

The uncontradicted testimony in the case shows that the plaintiff, in June, 1920, by assignment in writing, became the owner of two certain drafts, the one pertinent to this action being drawn by the Revisiones Bancken in Kristiania, Norway, on Brown Brothers & Company of New York, in favor of one Santeri Nuor-

teva in the sum of $5,000. This draft was, at the time of the assignment to the plaintiff, in the hands of the United States Attorney for the Southern District of New York and for that reason could not be indorsed by the payee to the plaintiff. Some months later, and on or about October 28, 1920, the plaintiff being obliged to make a trip to Russia, executed a special power of attorney to one Edwin E. Wright covering both drafts in the words " to ask, demand, sue for, recover and receive certain two drafts for Five Thousand Dollars ($5,000.) each " and " to ask, demand, sue for, recover and receive all such sum and sums of money which is or shall be due, owing, payable and belonging to me, by any manner or means whatsoever, on account of said drafts from said Irving National Bank and said Brown Brothers & Company, or from any other person or persons whomsoever, and full authority to indorse my name upon said drafts."

Edwin E. Wright subsequently succeeded in recovering both drafts from the United States Attorney and presented the one pertinent to this action to Brown Brothers & Company for payment, filing with said company the aforementioned assignment to the plaintiff and the power of attorney from the plaintiff to him.

Brown Brothers & Company, the drawee named in said draft, refused to pay Wright cash therefor but gave him their check drawn on the National Bank of Commerce in New York payable to Emerson P. Jennings.

After presenting the said check to Brown Brothers & Company for cashing, and after Brown Brothers & Company had refused to cash the same, the check was deposited in the Elmhurst Branch of the defendant for the account of Marie C. Wright. When so deposited it bore the following indorsements:

" Emerson P. Jennings
" Emerson P. Jennings
" Edwin E. Wright
" Marie C. Wright."

Plaintiff testified that the indorsements of his name were forgeries. It is not denied by the defendant and was proved by the plaintiff on the trial, that the defendant collected the proceeds of said check, *i. e.*, $5,000, and credited them to the account of Marie C. Wright. Subsequently Marie C. Wright checked out the entire amount and the defendant paid out all of said money to persons other than the plaintiff.

The plaintiff returning to this country in October, 1921, discovered that Wright had absconded. He made efforts to locate him but without success, and then notified the defendant and

demanded the payment to him of the said sum of $5,000, which was refused.

The chief issue between the parties was whether the power of attorney from plaintiff to Wright authorized Wright to indorse Jennings' name upon the check and collect the same. In the court below it was held that the power of attorney in question only permitted Wright to indorse the drafts and receive the moneys due thereon, and that such authority was not sufficient to authorize him to indorse and collect the proceeds of the check. In my opinion this decision is correct.

In *Holtsinger* v. *National Corn Exchange Bank* (37 How. Pr. 203; affd., 40 id. 720) plaintiff appointed Green & White his attorneys, " to ask, demand, receive and receipt for any and all pay and allowances due me from the government of the United States," and " to sign my name to any receipt, payroll, voucher, or other acquittance of such dues; and for the purpose aforesaid, I do hereby grant unto my said attorneys full power to execute and deliver all needful instruments and papers." Richard Green, Jr., was a member of the firm of Green & White, appointed in said power. He received two drafts from the Treasurer of the United States payable to Holtsinger, the plaintiff, which were indorsed as follows:

" Pay to the order of R. Green, Jr.;

" George W. Holtsinger;

" R. Green, Jr.;

" Charles H. Green;"

Holtsinger's signature being made by R. Green, Jr. The drafts were deposited in the defendant bank to the credit of Charles H. Green, a situation analogous to the case at bar.

The court said in that case: " The power of attorney is not sufficiently broad and comprehensive to authorize the attorney to sign or indorse plaintiff's name to any bill, draft or note. The attorney was a special agent for one single purpose, and when he had received and receipted for the drafts or ' warrants ' specified, he had executed his power, and his authority as agent terminated. He held the drafts precisely as he would have held money if he had received that instead of the bills from the United States officer, viz., as the property of plaintiff, with no power or right of disposition whatever, save to pay over to plaintiff."

In *Porges* v. *U. S. Mortgage & Trust Co.* (203 N. Y. 181) the agent, Hoyt, had a power of attorney from the plaintiff to negotiate the sale of a piece of real estate and " to accept either cash or other property, or both, * * * to sign contracts and to execute any and all papers in connection therewith and also full authority

to sign, sell and manage any property so accepted, * * * and to pay out any necessary money in settlement of interest, taxes, water, salaries or other bills or court costs and commissions." He received a check indorsed: "Pay to the order of Julia W. Porges. J. L. Van Sant." Hoyt, the agent, thereupon indorsed it thus: "Pay to the order of A. E. Hoyt. Julia W. Porges," and thereunder, "A. E. Hoyt," and deposited it to his account with the defendant. The court said: "Express authority to Hoyt to make the plaintiff an indorser of this check the power of attorney did not give. If he possessed it, it inhered in the authority expressly given to do other acts, and this it did not do unless it was reasonably necessary to effectuate the objects of the agency, and, therefore, within the intent of the plaintiff; and it must appear clearly that the accomplishment of the acts expressly authorized required the exercise of the authority to indorse. The express authority to receive negotiable paper does not imply the power to indorse it."

In the case of *Standard S. S. Co.* v. *Corn Exchange Bank* (220 N. Y. 478) a clerk had authority to indorse checks by stamping with a rubber stamp the words, "Pay to the order of the Greenwich Bank. The Standard Specialty Co.," and writing thereunder in her own handwriting, "Percy H. Pinder, Treasurer." She collected several checks, wrote identically the same words thereon as indorsements, but entirely in her own handwriting, and they were deposited in the defendant bank. The court held that the indorsements were forgeries and that the defendant obtained no title whatsoever thereto.

It is argued that the assignment contemplated that Wright should indorse the check if necessary to collect the money and that in considering the intention of the plaintiff when he gave Wright his power of attorney, it should be remembered that the original Nuorteva drafts were in the hands of the Federal authorities; that as Jennings was about to leave town for an extended trip, it was necessary that some one on the ground should be authorized to do the preliminary work necessary to release the drafts, and the recitals of the power of attorney show it was anticipated that it would be necessary to indorse the drafts so that they might be collected; that it probably was not anticipated at the time of the execution of the power that instead of Brown Brothers & Company paying the draft in cash they would issue their check, but, expecting that actual cash would be turned over to his agent, Jennings authorized the indorsement of the drafts; that if Wright was not to receive the cash from Brown Brothers & Company and thereby use and sign Jennings' name in any manner, the power of attorney was not needed at all, for Wright as a representative of Jennings, or even Jennings' attorney at law,

could have received the drafts from the Federal authorities and presented the one to Brown Brothers & Company and received their check without any power of attorney. The argument is not without force.

It may be granted that where agency is established and the indorsement of the principal's checks by the agent is reasonably necessary to effectuate the objects of the agency, the power to indorse inheres in the authority expressly given to do other acts (*Guaranty Trust Co.* v. *Manhattan Co.*, 183 App. Div. 586, 589), and that the rule of strict construction adopted in the case of the execution by an agent of negotiable instruments is not to be pursued to the extent of defeating by technical interpretation the obvious intent of the principal as gathered from a reasonable interpretation of the instrument appointing the agent. (2 C. J. 638.) On the other hand, the express authority given Wright was to collect the drafts in question. The power of attorney was required for this purpose because it was necessary that the drafts should be indorsed. When Wright received the check from Brown Brothers & Company he had fulfilled the directions given him by the power of attorney. No authority was given him as to the disposition of the proceeds of the draft. If he had received cash from Brown Brothers & Company he would have had no right to spend it. Receiving a check in satisfaction of the draft gave him no additional power in this respect. The indorsement of the check was in no way necessary to carry out the purpose of the agency. If the absence of his principal required protection against holding the check until his return, certification would have afforded it.

The judgment and order should be affirmed, with costs.

Present — BLACKMAR, P. J., who concurs in separate memorandum, KELLY, JAYCOX, MANNING and YOUNG, JJ.

BLACKMAR, P. J. (concurring):

I concur. I am also of the opinion that when the agent indorsed the check and deposited it to his wife's credit, he converted it to his own use. The power of attorney as between principal and attorney gave authority only to act in the principal's interest. If he had exhibited the power of attorney to the bank and it bore on its face the authority to collect the cash, then, although the agent intended to convert it to his own use, the defendant would have been protected on the principle of an estoppel. But the attorney did not exhibit the power to the defendant, nor does the indorsement purport to be under a power of attorney. He, therefore, gave the bank no better title than he had himself, which was none.

Judgment and order unanimously affirmed, with costs.