# JOHN F. ROSACKER v. COMMERCIAL STATE BANK.[1]

May 11, 1934.

No. 29,910.

[1]Reported in 254 N. W. 824.

554

*Kerr, Nelson, O'Neill, Mohan & Dudley,* for appellant.
*Kennedy & Kennedy,* for respondent.

*LORING, Justice.*

Appeal from an order of the district court of Ramsey county denying plaintiff's motion for judgment notwithstanding the verdict or for a new trial.

In 1920 plaintiff had a claim against the American Bonding & Casualty Company of Sioux City, Iowa, which Harry A. Hageman, his attorney, reduced to judgment in 1921. Shortly thereafter a receiver was appointed in the Iowa courts to administer the assets of the casualty company, and the judgment was filed with him as a general claim. The law firm of Kass, Zink & Kass of Sioux City agreed with Hageman to handle the collection of the claim for one-third of the amount collected. This fee was to be divided one-third to Hageman and two-thirds to themselves. The claim was subsequently allowed by the referee, and October 16, 1930, a first dividend was declared in the receivership proceedings, and the court in authorizing its payment directed the receiver to draw checks to the order of the claimants, their assignees, or attorneys of record. Rosacker's claim was paid by a check drawn to the order of John F. Rosacker or Kass, Zink & Kass, who cashed it, deducted their commission, and drew their own check, dated December 6, 1930, payable to the order of "John F. Rossacker and Harry H. Hageman, Attorney." The bank upon which this check was drawn was closed before it was presented for payment, and October 31, 1931, Kass, Zink & Kass issued another check to take its place. This check was payable to "John J. Rossacker and Harry A. Hageman," was delivered personally to Hageman, was indorsed and deposited by him with respondent bank, and credited to the account of Hageman, who received all of the proceeds by subsequent checks upon his account. Rosacker received nothing. A check for a second dividend dated March 12, 1931, payable to "John F. Rosacker, Claimant, or Kass, Zink & Kass," was delivered to the latter, who indorsed it, deducted

their commission, and drew their own check payable to Rosacker and Hageman and mailed it to Hageman. This check was also indorsed and deposited with respondent bank to the credit of Hageman, who again checked out the proceeds, no part of which was received by Rosacker. The indorsements of Rosacker were forged, presumably by Hageman.

January 21, 1932, Rosacker was informed by the administrator of the estate of Mr. Zink of the firm of Kass, Zink & Kass that two dividends had been paid. Rosacker then employed other attorneys and March 1, 1932, caused the district court to issue an order directing Hageman to show cause why he should not turn over to Rosacker the proceeds of the dividend checks. March 11, 1932, Hageman made a partial payment of the amount owing to Rosacker. April 6, 1932, Rosacker's attorneys wrote Kass, Zink & Kass for photostatic copies of the checks used in payment of Rosacker's claim to Hageman but failed to obtain them. July 1, 1932, Rosacker swore out a warrant for the arrest of Hageman on a charge of embezzlement. During the summer of 1932 a third dividend check was received by Hageman and turned over to plaintiff, who, notwithstanding Hageman's unfaithfulness, gave him credit for the fees he would have been entitled to had he been faithful. August 16, 1932, Hageman died. September 14, 1932, one of the attorneys acting for Rosacker went to Sioux City and September 15, 1932, obtained photostatic copies of the checks cashed by Hageman. Rosacker then learned for the first time through what bank the checks had been cashed. Demand for payment of the plaintiff's share of the checks was made upon the defendant bank September 30, 1932, and this suit followed the bank's refusal to pay.

The trial court held that Hageman had implied authority to cash the checks which could not be limited by Kass, Zink & Kass, and upon motion of defendant directed a verdict in its favor.

■ Apparently the trial court's attention was not invited to the general authorities on the implied authority of an attorney to indorse checks payable to his client, but only to the case of National Bank v. Old Town Bank (C. C. A.) 112 F. 726, where it was held upon the peculiar facts there appearing that the attorney had im-

plied authority to indorse his client's name to a draft. It is true that in that case the court remarked that there was no privity between the client and the attorneys who stood in the position that Kass, Zink & Kass do here, but the decision is placed squarely on the ground of authority to indorse, implied from the circumstances. No such circumstances as those from which the authority was there implied exist in the case at bar. Nor do they tend to show that power to indorse was necessary to effectuate the collection. Without such circumstances, the overwhelming weight of authority is to the effect that an attorney has no authority to indorse his client's name to a check which comes into his hands even though he has an interest in the check by way of fees which he is authorized to retain. Talbot v. First & Sec. Nat. Bank, 145 Minn. 12, 176 N. W. 184; Brown v. Peoples Nat. Bank, 170 Mich. 416, 136 N. W. 506, 40 L.R.A.(N.S.) 657; Crahe v. Mercantile T. & S. Bank, 295 Ill. 375, 129 N. E. 120, 12 A. L. R. 92; Jackson Paper Mfg. Co. v. Commercial Nat. Bank, 199 Ill. 151, 65 N. E. 136, 59 L. R. A. 657, 93 A. S. R. 113; Porges v. U. S. M. & T. Co. 203 N. Y. 181, 96 N. E. 424. In Crahe v. Mercantile T. & S. Bank, 295 Ill. 375, 129 N. E. 120, 12 A. L. R. 92, the defendant, as in the case at bar, relied upon National Bank v. Old Town Bank (C. C. A.) 112 F. 726, but the Illinois court distinguished it as we do upon the facts.

The defendant contends that Kass, Zink & Kass could not, by making their check payable to plaintiff and Hageman, restrict Hageman's authority to collect in money, and that consequently in the reduction of the claim to money Hageman had a right to indorse plaintiff's name. We do not regard such contention as sound. The right of Hageman to indorse plaintiff's name was no greater than it would have been had the company or the receiver remitted direct to Hageman a check payable to the plaintiff. If such had been the case, the authorities are substantially unanimous in support of the doctrine that Hageman would have had no right to indorse and that the bank would be responsible for accepting a forged indorsement. Hageman may have been entitled to collect in cash; but, having received and accepted a check in the form that he did, he might not

indorse his client's name, much less forge it in order to obtain the. proceeds.

■ The defendant also contends that plaintiff is estopped to assert his rights against it by his delay in advising defendant that his name had been forged. This would raise a serious question if there were a showing of prejudice after plaintiff learned that defendant cashed the check; but it is frankly admitted that after September 15, 1932, when plaintiff ascertained this fact, the defendant had no way of recouping its loss from Hageman or his estate. Hence there is no estoppel. Houseman-Spitzley Corp. v. American State Bank, 205 Mich. 268, 171 N. W. 543, 546; Stern v. Manhattan Co. 134 Misc. 351, 235 N. Y. S. 634.

In the discovery of a forgery and in the duty to notify the bank which has cashed a forged check or one with a forged indorsement, there is a clear distinction between the duty of a depositor whose name has been forged to a check and that of a payee whose indorsement has been forged. We are here dealing with the latter. A bank at its own peril determines the genuineness of the payee's indorsement. It may require identification or responsible guaranty upon presentation. If it elects to accept an indorsement upon the responsibility of its depositor, it is not in a position, if ever, to invoke laches or an estoppel against the payee until he has actual knowledge of the forgery and that the bank has cashed the check. He owes no duty of active diligence to discover and notify the bank. Stern v. Manhattan Co. 134 Misc. 351, 235 N. Y. S. 634. In the opinion in the case last cited it was seriously contended that the payee may not be estopped because he is not in privity with the bank and owes it no duty. We need not go so far in this case, nor need we decide the question. We hold that there was no estoppel here and leave the question as to whether estoppel is ever available against the payee to a case where its decision is necessary.

■ The defendant claims that plaintiff, by a summary proceeding against Hageman to compel him to pay over the money he had received, elected a remedy inconsistent with the one now sought and is estopped to proceed against the bank. This contention is without merit. We see no inconsistency between the remedies

.sought. Aho v. Republic I. & S. Co. 104 Minn. 322, 116 N. W. 590; Geo. A. Hormel Co. v. First Nat. Bank, 171 Minn. 65, 212 N. W. 738; Stern v. Manhattan Co. 134 Misc. 351, 235 N. Y. S. 634. Nor do we see any ratification of Hageman's act in the complaint made in a criminal proceeding against Hageman for embezzlement.

The order appealed from is reversed with directions to enter judgment for the plaintiff for the share he seeks of the two checks cashed by defendant upon which his indorsement was forged.

Reversed with directions.

*DEVANEY, Chief Justice,* absent in attendance upon pardon board, took no part.